UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:09-cr-00126ACC-KRS

ADVANCED MEDICAL PRACTICES, INC.

**PLEA AGREEMENT**

A. Particularized Terms

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Brian Albritton, United States Attorney for the Middle District of Florida, and the defendant, ADVANCED MEDICAL PRACTICES, INC., and the attorney for the defendant, William J. Sheaffer, Esquire, mutually agree as follows:

1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with health care fraud, in violation of 18 U.S.C. § 1347.

2. Maximum Penalties

Count One carries a fine of up to $500,000, a term of probation of not less than one year up to five years, and a special assessment of $400 per felony count, said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make

Defendant's Initials _____   AF Approval _____
                             Chief Approval _____

restitution to any victim of the offense, or to the community, as set forth below. With respect to the maximum fine, if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined, pursuant to 18 U.S.C. § 3571(d) to not more than twice the gross gain or twice the gross loss, unless imposition of such a fine would unduly complicate or prolong the sentencing process.

3. <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First</u>: That the defendant knowingly devised or participated in a scheme to defraud a health care benefit program, or for obtaining money or property owned by, or under the custody or control of, any health care benefit program by means of false or fraudulent pretenses, representations, or promises;

<u>Second</u>: That the Defendant did so in connection with the delivery of or payment for health care benefits, items, or services;

<u>Third</u>: That the Defendant acted willfully with an intent to defraud; and

<u>Fourth</u>: That the health care benefit program affected commerce.

4. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the

Defendant's Initials _____      2      Chief Approval _____

time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5. <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution to the U.S. Department of Health and Human Services Medicare, Division of Premium Collection and Billing, PO Box 7520, Baltimore, MD 21207.

6. <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §982(a)(7), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a $593,000 money judgment. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the money judgment sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court make a determination that the government has established the amount of the proceeds is $593,000 and enter an order of forfeiture. Pursuant to Rule 32.2(b)(3), the defendant agrees that the order of forfeiture shall be

Defendant's Initials_____    3    Chief Approval_____

final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees that the United States shall, at its option, be entitled to forfeiture of any property (substitute assets) of the defendant up to the value of $593,000 in order to satisfy the money judgment. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take whatever steps are necessary to pass clear title to the United States of any assets sought to satisfy the money judgment. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property which could be used to satisfy the money judgment and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

Defendant's Initials _____    4    Chief Approval _____

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

### B. Standard Terms and Conditions

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials _____    5    Chief Approval _____

3. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4. <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a

Defendant's Initials _[initials]_                    6                    Chief Approval _[initials]_

decision until it has had an opportunity to consider the pre-sentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. <u>Appeal of Sentence-Waiver</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the

Defendant's Initials _____    7    Chief Approval _____

Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

6. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction

Defendant's Initials _____    8    Chief Approval _____

with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below as to the defendant are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

## FACTS

The Medicare program (Medicare) was a federal program that provided

Defendant's Initials _____        9        Chief Approval _____

supplementary medical insurance benefits for individuals, typically those sixty-five years old and older, who were entitled to Social Security benefits (hereinafter referred to as "Medicare beneficiaries"). The benefits available under Medicare are prescribed by statute and by federal regulations under the auspices of the Centers for Medicare and Medicaid Services (CMS), an agency of the United States Department of Health and Human Services (HHS) responsible for the administration of the Medicare program. CMS has contracted with First Coast Service Options (FCSO) to receive, adjudicate and pay certain Medicare claims submitted to it by Medicare beneficiaries and providers in the State of Florida.

Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b). The operation of the Medicare program affected commerce. Part B of the Medicare program pays providers for outpatient medical services such as infusion therapy and physician office visits.

To bill Medicare for services rendered, a medical provider submits a claim on a CMS Form 1500 to FCSO, or sends the form to a billing service, which, in turn, bills Medicare on behalf of the provider. The information required included: (a) the Medicare beneficiary's name; (b) the Medicare beneficiary's Health Insurance Claim Number (HICN); (c) the medical service provided as identified by the standard Current Procedural Terminology (CPT) or Healthcare Common Procedural Coding System (HCPCS) code number or numbers, which define the nature of the item or service; (d) the diagnosis or diagnoses supporting the services provided as identified by the appropriate standard diagnosis code number or numbers; (e) the name and the Unique Physician Identification Number (UPIN) of the physician rendering the medical services;

Defendant's Initials _____    10    Chief Approval _____

(f) the date the medical service was provided; and (g) the charges for the medical service provided to the Medicare beneficiary.

When a CMS Form 1500 is submitted, the provider certifies that the contents of the form are true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. On the form, the Medicare provider certifies that "the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations." The form advises the provider "any one who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws."

Advanced Medical Practices, Inc., (AMP) was incorporated in the State of Florida on December 7, 1993. Robert J. Roberts has been the President of AMP since its inception. On March 10, 1999, Sue Anne Rogers became the Vice-President of the corporation, a position which she has continuously held since that time. AMP's principal place of business located at 2170 West State Road 434, Suite 190, Longwood, Florida. AMP was a medical clinic specializes in alternative medicine, and, specifically, the administration of chelation therapy. Chelation therapy is the administration of a man-made amino acid called ethylene diamine tetra-acetic acid (EDTA) and/or other chemical agents. Administration is done intravenously (i.e., via IV infusion). EDTA therapy is a medically recognized treatment for heavy metal poisoning,

Defendant's Initials _SMR_    11    Chief Approval _NM_

usually either lead or mercury poisoning. There is a theory espoused by alternative medicine practitioners that the EDTA "chelates," or bonds, with calcium, one of the components of atherosclerotic plaque that lines the inner walls of the arteries. Based on this perceived "bonding" property, alternative practitioners believe that intravenous infusion of EDTA can rid the body of plaque and other "poisons" in the body, thereby improving circulation, energy and general wellness. This theory has not been scientifically proven.

According to a longstanding Medicare national coverage determination on the payable status of claims related to chelation therapy, "The application of chelation therapy using ethylene diamine-tetra-acetic acid (EDTA) for the treatment and prevention of atherosclerosis is controversial . . . EDTA chelation therapy for the treatment or prevention of atherosclerosis is not covered." The coverage determination goes on to further state, "The use of EDTA as a chelating agent to treat atherosclerosis, arteriosclerosis, calcinosis, or similar generalized condition not listed by the FDA as an approved use is not covered. Any such use of EDTA is considered experimental." Hence, EDTA chelation therapy is only reimbursable for the treatment of a limited number of conditions, specifically, for the treatment of heavy metal poisoning.

The American Medical Association has established HCPCS codes specifically for the administration of chelation therapy. The HCPCS code J0600 applies to the injection of up to 1000 mg of EDTA. The code M0300 applies to "IV Chelation Therapy (chemical endarterectomy)." HCPCS code J3520 applies to edetate disodium (per 150 mg), which is another chelating agent. According to Medicare coverage guidelines, the diagnoses that support medical necessity for chelation therapy are 961.2 (heavy metal

Defendant's Initials _____          12          Chief Approval _____

poisoning); 984.0 (lead poisoning); 984.1 (organic lead poisoning), and 984.8 (other lead poisoning).

There are separate CPT codes used for the administration of IV infusion not related to chelation therapy. The CPT codes for IV infusion do not apply to the administration of chelation therapy for two reasons. First, Medicare coverage guidance states that "[s]eparate payment for IV infusion therapy is allowed if no other service is rendered at the same time as the IV infusion therapy." In other words, if no other specific code applies, then a code for IV infusion may be used for a particular service. Because there are codes specifically for the administration of EDTA chelation therapy, it is inappropriate to use the codes for IV infusion therapy.

Second, according to Chapter 16, Section 180 of the Medicare Benefit Policy Manual, if one service is not covered by Medicare, all related services will not be covered. Specifically regarding chelation therapy, the Medicare guidelines clearly state that "[w]hen noncovered chelation therapy (J3520 and M0300) is administered, both the drug and the administration (90780-90799) are noncovered." Thus, any office visit done to discuss chelation therapy, and any office time spent to administer chelation therapy, are not covered by Medicare.

Knowing that chelation therapy was a not a medical service for which AMP would receive reimbursement by Medicare if the proper codes that reflected the service being rendered were used, the defendant falsely and fraudulently used the CPT codes for the administration of infusion therapy when submitting claims for chelation therapy administration. The chelation therapy actually being administered to Medicare beneficiaries and subsequently billed to the Medicare program was for the purpose of

Defendant's Initials _____    13    Chief Approval _____

treating arteriosclerosis, atherosclerosis and other vascular disorders, which the defendant knew to be specifically prohibited as being reimbursable services under Medicare guidelines. In addition, the defendant submitted claims to the Medicare program for services related to the administration of chelation therapy, such as extended medical visits, infusion mediums and vascular testing, knowing full well that if Medicare had been informed that these services were ancillary to and related to the administration of the non-reimbursable chelation therapy, that the payment for these would have also been denied. The defendant electronically submitted, or caused to be submitted, the false claims for payment by the Medicare Part B program.

On August 3, 2006, the defendant submitted, or caused to be submitted claim number 590906226441500 to Medicare for intravenous infusion therapy provided to Medicare beneficiary HB. The diagnosis used to justify the claim was 443.9, peripheral vascular disease. Although the claim reflected that HB received infusion therapy, in fact, the patient received chelation therapy, a service non-reimbursable by Medicare. The defendant submitted or caused to be submitted $340 on the claim to Medicare for this service, and AMP was paid $139. During the time period of January 1, 2006 through March 1, 2009, Medicare paid AMP and the defendant approximately $593,000 for reimbursement of all related false claims, resulting in conversion of government monies.

Defendant's Initials _____    14    Chief Approval _____

10. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 30 day of June, 2009.

_____
Sue Anne Rogers, Vice-President,
Advanced Medical Practices, Inc.
Defendant

A. BRIAN ALBRITTON
United States Attorney

By: _____
Daniel W. Eckhart
Assistant United States Attorney

_____
William J. Sheaffer
Attorney for Defendant

_____
Roger B. Handberg
Chief, Orlando Division
Assistant United States Attorney

Defendant's Initials _____                    Chief Approval _____